[No. 45766. En Banc. September 13, 1979.]

WALTER H. GRIGGS, ET AL, *Respondents,* v. AVERBECK REALTY, INC., ET AL, *Defendants,* ETHEL G. BRANCH, *Petitioner.*

*Lee R. McNair* (of *McNair & Henderson, Inc., P.S.*) and *Richard B. Sanders,* for respondents.

*David Skellenger* and *Jay V. White,* for petitioner.

BRACHTENBACH, J.—Before reciting the facts we set out a skeletal summary of these consolidated cases. A default judgment, taken against petitioner Ethel Branch, was set aside on her motion. The case was tried; petitioner prevailed. The Court of Appeals reinstated the default judgment.

After the judgment creditors attempted collection of the default judgment against her former husband, petitioner moved to restrain the judgment creditors from collecting the default judgment which had been entered against her former husband from former community assets awarded to

petitioner in the dissolution action. The trial court so restrained the judgment creditors. The Court of Appeals reversed.

Both opinions of the Court of Appeals were unpublished. We granted review and consolidated the cases. We reverse the Court of Appeals in both cases.

This controversy concerns only petitioner Ethel Branch and respondents Griggs. It arises from several successive real estate contract sales of the Roxboro apartment house in Seattle.

The prior owners of the apartment, Wedemeyers, sold it to respondents Griggs in 1964, and later assigned their vendors' interest. The Griggs sold to the Johns in 1967. In 1969, the Johns sold to William and petitioner Ethel Branch, then husband and wife. Later that year, the Branches leased to Watkins, with an option to purchase.

Watkins failed to make payment on the contract in October 1969. The prior owners' assignees then served a notice of intention to declare forfeiture upon all the subsequent purchasers, i.e., the Griggs, the Johns and the Branches. The delinquencies were not paid and the Wedemeyers' assignees declared the interests of all contract purchasers forfeited in November 1969.

In 1970, respondents Griggs sued to reinstate their real estate contract rights against the original sellers and their assignees. A year later, they amended their complaint and sought to recover from the Branches the delinquent payments and the difference between the amount owed by the Griggs and that owed to them by their vendees plus interest and attorney's fees.

The Branches answered, alleging that they had earlier acquiesced in the repossession. As affirmative defenses they asserted that the respondents Griggs were guilty of laches, were without privity and failed to state a claim.

In 1971, the Branches moved for summary judgment on grounds that an election of remedies barring a damages action resulted from the Griggs' initial complaint to quiet title. The trial court orally granted the motion, but denied

it in writing after receiving respondents Griggs' motion for reconsideration.

In 1973, before the case went to trial, William and petitioner Ethel Branch divorced. Under the divorce decree, William Branch assumed the obligation to defend the Griggs' action. About this time, the Branches' attorney withdrew because his legal fees had not been paid.

The case finally came to trial on June 25, 1974. Two days earlier, William Branch had obtained $500 from his former wife, petitioner Ethel Branch, by claiming that it would enable him to secure counsel to represent them. Mr. Branch, however, did not immediately contact his former attorney; rather, he appeared pro se and obtained a continuance, upon terms, until September 23, 1974.

In early July, William Branch told petitioner that the trial had been continued indefinitely and assured her that they were represented by counsel. For the rest of the summer, petitioner heard nothing from her former husband about the case.

In mid-July, William Branch gave his former attorney $200 to secure his counsel; Mr. Branch, without petitioner's knowledge, had used $300 of her $500 to pay some of his creditors. The attorney told Mr. Branch that another $300 was necessary before he would agree to act as counsel.

William Branch did not raise the additional money and on August 15 was informed of the attorney's withdrawal. The attorney informed respondents Griggs and the court of his withdrawal; he did not so inform petitioner Ethel Branch. Neither did William Branch tell petitioner of the attorney's withdrawal since he "couldn't face [his] ex–wife for squandering five hundred dollars of her money."

William Branch did not appear at the September 23 trial; neither did petitioner Ethel Branch, who did not know of its scheduling. A default judgment in the amount of $36,976.20 plus attorney's fees of $4,500 was then entered "against the defendants Dorothy Johns, William A. Branch and Ethel G. Branch, jointly and severally."

On October 6, petitioner received the attorney's office file from her former husband and for the first time discovered the September 23 trial date. She immediately contacted the attorney and he reentered the case on October 18 by filing a CR 60 motion to vacate the default judgment. The motion asserted that meritorious defenses existed, but the accompanying affidavits mainly detailed excusable neglect grounds. The attorney in his affidavit said about defenses: "I want to affirmatively state that there is a strong defense on the merits. Judge Noe of this Court once gave summary judgment in favor of defendants although he did subsequently deny the motion upon reconsideration without prejudice to renewal of the motion at time of trial."

In December 1974, the trial court entered an order which vacated the default judgment against Ethel Branch on excusable neglect grounds; the court imposed terms of $1,027 which were paid by petitioner Ethel Branch. Contrary to usual practice, the order was prepared by the attorney for respondents Griggs, the losing parties.

About this same time, petitioner's former husband, William Branch, also moved to vacate the default judgment entered against him. The trial court denied his motion.

Petitioner's reinstated case went to trial in July 1976 and she prevailed on her election of remedy defense. Respondents Griggs appealed both as to vacation of the default and the election of remedies defense. The Court of Appeals reversed by ruling that the trial court incorrectly vacated the default judgment. The appellate court held that petitioner's motion to vacate was insufficient since it did not comply with CR 60(e)(1)'s requirement that it be supported by an affidavit setting out the specific facts constituting her defense. Presumably because the default judgment was reinstated, the Court of Appeals did not decide the election of remedies issue and it is not before us.

While the Court of Appeals was considering this appeal, respondents Griggs sought to enforce their default judgment against William Branch by executing on community property distributed to petitioner Ethel Branch under the

divorce decree. Petitioner successfully moved the trial court for an order restraining respondents from such action and respondents appealed.

The Court of Appeals reversed the restraining order. It ruled that the default judgment against William Branch was a judgment on a community obligation that could be satisfied from former community property distributed to petitioner, "even if the latter has no separate liability."

This court granted Ethel Branch's petitions for review from both of the above unpublished decisions of the Court of Appeals and then consolidated the cases. For the following reasons, we now reverse.

## I

In examining the propriety of the trial court's vacation of the default judgment against petitioner, it is appropriate to put into perspective default judgments and the judicial attitude thereto.

Default judgments are not favored in the law. *Ramada Inns, Inc. v. Lane & Bird Advertising, Inc.,* 102 Ariz. 127, 129, 426 P.2d 395 (1967); *BDM, Inc. v. Sageco, Inc.,* 57 Haw. 73, 76, 549 P.2d 1147 (1976). A default judgment has been described as one of the most drastic actions a court may take to punish disobedience to its commands. *Widicus v. Southwestern Elec. Coop., Inc.,* 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960). The reason for this view is that "[i]t is the policy of the law that controversies be determined on the merits rather than by default." *Dlouhy v. Dlouhy,* 55 Wn.2d 718, 721, 349 P.2d 1073 (1960).

Balanced against that principle is the necessity of having a responsive and responsible system which mandates compliance with judicial summons, that is, a structured, orderly system not dependent upon the whims of those who participate therein, whether by choice or by the coercion of a summons and complaint.

A proceeding to vacate a default judgment is equitable in character and relief is to be afforded in accordance with equitable principles. *White v. Holm,* 73 Wn.2d 348, 351, 438

P.2d 581 (1968). The trial court should exercise its authority "liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done." *White v. Holm, supra* at 351.

The fundamental guiding principle has been thus stated:

> [T]he overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.

*Widicus v. Southwestern Elec. Coop., Inc., supra* at 109.

Several other elements are to be considered. The motion to vacate is addressed to the sound discretion of the trial court and this court, on appellate review, will not disturb the trial court's disposition unless it clearly appears that that discretion has been abused. Abuse of discretion is less likely to be found if the default judgment is set aside. *White v. Holm, supra* at 351–52. *Agricultural & Livestock Credit Corp. v. McKenzie,* 157 Wash. 597, 289 P. 527 (1930).

Relief from a judgment is governed by the above stated principles, but the grounds and procedures are set forth in CR 60. Under CR 60(b)(1) there must be excusable neglect in allowing the default to be taken. Here the trial court entered a specific finding of fact that there was excusable neglect on the part of petitioner. The decree in the petitioner's divorce affirmatively obligated her husband to defend existing litigation. Petitioner advanced money to pay a defense lawyer in this action. Petitioner had no knowledge of the actual trial date. She did not know that her former husband had not paid the requested retainer and that the defense attorney had withdrawn. She moved promptly to vacate the judgment and paid the $1,027 imposed as terms. There was no abuse of discretion in finding excusable neglect.

More difficult is the failure of her attorney, in his affidavit supporting the motion to vacate, to comply literally with CR 60(e)(1) which requires a statement of the facts constituting a defense. After setting out the facts relating to excusable neglect, the attorney's affidavit stated: "I want to affirmatively state that there is a strong defense on the merits. Judge Noe of this Court once gave summary judgment in favor of defendants although he did subsequently deny the motion upon reconsideration without prejudice to renewal of the motion at time of trial." The motion to vacate stated that it was based upon the accompanying affidavits and the file.

■ The prime purpose of the rule is to prove to the court that there exists, at least prima facie, a defense to the claim. *White v. Holm, supra* at 352. This avoids a useless subsequent trial if the defaulted defendant cannot bring forth facts to make such a showing when seeking to vacate the default.

Bearing in mind the fundamental purpose of doing justice, the question becomes whether the trial court had before it sufficient evidence of the meritorious defense to justify vacating the judgment. Clearly the better practice, and one which is seldom excused, is to set out the facts in affidavit form. There was a violation of CR 60 in this case. But the rules are to be construed to secure the just determination of every action. CR 1.

The trial court did not operate in a vacuum without knowledge of the alleged defense. The case had been pending for more than 4 years. Trial had been preassigned to the trial court judge who granted the vacation some 31 months earlier than the act of vacation. The pleadings and memorandum plainly revealed the facts and theory of the defense upon which the petitioner ultimately prevailed. A motion for summary judgment for petitioner had been heard, orally granted and then denied on reconsideration.

Importantly, the trial court was aware of the deficiency in petitioner's affidavits and set out in its findings that no facts were set forth within the affidavits but found that the

petitioner had the basis of a legal defense. The court then referred to the affidavit in support of the earlier summary judgment. That finding was prepared by respondent–plaintiff's counsel. In fact, there was no affidavit in the summary judgment proceeding but there was an extensive memorandum of facts and law on the very defense upon which petitioner prevailed.

Prior to the trial court's action, this court had indicated that a court could look to the file in ascertaining the prima facie existence of a defense. In *Beckett v. Cosby,* 73 Wn.2d 825, 828, 440 P.2d 831 (1968), we said:

> We do not agree, however, that the record which is presented to us for review, or *the file which was properly before the trial court for consideration,* established such a meritorious defense . . .

(Italics ours.)

Given the purpose of the rules, the liberality to be applied to preserve substantial rights and do justice between the parties, *Haller v. Wallis,* 89 Wn.2d 539, 543, 573 P.2d 1302 (1978), and the existence of the *Beckett v. Cosby* language, we cannot say that there was an abuse of discretion. An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court. *Morgan v. Burks,* 17 Wn. App. 193, 198, 563 P.2d 1260 (1977).

Here an informed judge, aware of the deficiency in the affidavits, exercised his discretion with the facts and theory of the defense known to him. There was no error.

## II

The second case decided by the Court of Appeals, which we reverse, concerned the ability of the judgment creditors, holding a default judgment against petitioner's former husband, to execute upon petitioner's now separate property, but which was community property prior to the divorce decree that awarded that property to petitioner.

The chronology of events leading to this issue is:

1970—original complaint by plaintiffs seeking to quiet title against contract purchasers, including petitioner and her then husband;

1971—amended complaint seeking a monetary judgment against petitioner, her then husband and another purchaser, if the contract of plaintiffs was not reinstated;

1973—petitioner and husband are divorced;

October 1974—default judgment entered against defendants "Dorothy Johns [not a party herein], William A. Branch and Ethel G. Branch, jointly and severally";

December 1974—default judgment set aside as to petitioner Ethel G. Branch;

September 1976—judgment entered that the 1971 amended complaint be stricken and dismissed with prejudice, and that plaintiffs be estopped from claiming the relief prayed for in that complaint.

■ The judgment creditors argue that the former husband was acting as agent or manager of the community when he allowed the default judgment to be taken. They also contend that a judgment against a husband is presumptively a community obligation. Neither proposition is sustainable under these facts. The community had been dissolved 19 months before the entry of the default judgment. "The entry of the divorce decree dissolved the community, and the appellant [husband] could not continue as manager of an entity that had ceased to exist." *Barkley v. American Sav. Bank & Trust Co.,* 61 Wash. 415, 417, 112 P. 495 (1911). Likewise, when the default was taken here, there was no longer a community against which it could presumptively operate.

The judgment creditors rely principally upon *Dizard & Getty v. Damson,* 63 Wn.2d 526, 387 P.2d 964 (1964). That case is readily distinguishable. The plaintiff there had attached property subsequently awarded to the wife in the divorce. The ex–wife was joined as a party after the divorce and resisted liability. On appeal she lost on the merits. Here there was no movement against the property during the marriage. The ex–wife here prevailed on the merits, the

court dismissing the complaint as to her and holding that the creditors were estopped from claiming the relief sought.

Had the creditors secured a judgment against the husband during the marriage, a different question would be presented. They did not. Had the petitioner ex-wife lost on the merits, a different question would be presented. She did not. Thus we hold that when the community creditors have not obtained, during the existence of the marriage, a judgment against one or both of the spouses, or against the community, and when a former spouse, after termination of the marriage, prevails on the merits, then property distributed to that former spouse—even though previously community property—cannot be used to satisfy a judgment against the other former spouse. Our holding is limited necessarily to such narrow facts.

The decisions of the Court of Appeals are reversed and the trial court is affirmed.

UTTER, C.J., ROSELLINI, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and SCHUMACHER, J. Pro Tem., concur.

Reconsideration denied February 26, 1980.