IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| NAUMES, INC., an Oregon corporation, | ) | No. 32191-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHELAN, a municipal | ) | PUBLISHED OPINION |
| corporation, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, A.C.J. – In this land use case, developer Naumes, Inc. appeals a second trial court's decision denying its motion to compel arbitration under a development agreement between it and the City of Chelan (City) concerning an industrial and commercial development. In 2003, the City approved a planned development rezone and general binding site plan (GBSP) for Naumes' property. In 2012, Naumes submitted a specific binding site plan (SBSP) for a particular lot showing a road plan deviating from the GBSP. The City rejected what it considered a nonconforming SBSP. Naumes initially filed an administrative appeal and a first lawsuit to compel arbitration. The first trial court denied Naumes' arbitration request and deferred to the hearing examiner, who affirmed the City's determination. This second lawsuit followed. Naumes contends the second trial court (the same court, Judge Lesley A. Allan) erred

in denying its arbitration request because it argues the parties' development agreement, in essence, supplants the City's land use ordinance process that would otherwise be required to modify or alter a GBSP. We disagree with Naumes, and affirm.

FACTS

Naumes is a developer and owner of a 198-acre property located in Chelan known as the Apple Blossom Center (the Property). In March 2003, the parties entered into a development agreement. The agreement included an arbitration provision:

> 16. Review Procedures and Standards for Implementing Decisions. Review and resolution of disputes by the Parties, their successors and assigns, shall be resolved by arbitration as follows: In the event the Parties cannot agree on any matter set out in this Agreement, they shall promptly consult together and attempt to resolve the dispute. In the event they cannot agree upon a resolution of the dispute, the same shall be settled by arbitration pursuant to Chapter 7.04 RCW et. seq. except as herein modified.

Clerk's Papers (CP) at 295. The agreement stated, "Naumes and the City desire that the future development of the Property be consistent with land use and development regulations of the City now existing or hereafter adopted." CP at 280. Thus, property development was required to be consistent with the City's GBSP process. The development GBSP includes a placement of streets, roads, improvements, utilities, open spaces, and other features of the completed project. The Chelan City Council approved the GBSP on April 24, 2003 in ordinance no. 2003-1266.

During the fall of 2012, Naumes entered into a purchase and sale agreement with a third party buyer for lot 16 of the Property. Naumes submitted a SBSP

2

application for lot 16 to facilitate the sale. The SBSP application sought removal of a portion of Isenhart Road, a deviation from the GBSP. The City rejected the proposed SBSP because it conflicted with the GBSP. Naumes argued relocating Isenhart Road merely effected a modification of the GBSP. The City in response reasoned the original GBSP, including the segment of Isenhart Road, could potentially be modified, but solely by using the GBSP modification process pursuant to the applicable city regulations found at Chelan Municipal Code (CMC) § 16.10.070.

In spring 2013, the City and Naumes reached an impasse over the relocation of Isenhart Road. The dispute was clouded by Washington State's desire to relocate the intersection of Isenhart Road with a state road and the creation of a realigned, an extended, and a relocated Isenhart Road. The parties agreed to submit the City's interpretation of the matter to the City's hearing examiner. The City's ordinances allowed for Naumes to challenge the City's interpretation in the form of an administrative appeal. Naumes filed a notice of appeal of the City's interpretation. Naumes asked the hearing examiner find the entire matter subject to arbitration under the development agreement. Alternatively, Naumes asked the hearing examiner to find the City erred in failing to approve the modification of lot 16 through the SBSP application.

In June 2013, before the hearing examiner filed his decision, Naumes sued for declaratory judgment and breach of contract in superior court and asked for an order to compel arbitration. The trial court denied the motion to compel arbitration, finding, "The city code was not subject to the development agreement, and it would be improper for

3

the Court to send the city code to arbitration to be interpreted to determine the proper course of action under the city code." CP at 245. The court determined the administrative appeal should go forward. The hearing examiner found the CMC did not authorize modification of a GBSP through a SBSP. The sole mechanism available to Naumes to eliminate the Isenhart Road segment would be the same process in the code for approval of the original general binding site plan.

In August 2013, Naumes again sued the City relating to the Property, partly asking to arbitrate the GBSP modification issue. The August 2013 lawsuit raised several claims raised in the June 2013 lawsuit with the addition of theories based on the Land Use Petition Act (LUPA), chapter 36.70C RCW, promissory estoppel, and breach of oral covenant. Naumes requested that the entire dispute be referred to arbitration or, in the alternative, the court accept review of the hearing examiner's decision under LUPA.

The City argued the claims were "barred by the doctrines of collateral estoppel and/or res judicata." CP at 201. The City opposed the arbitration motion. The City argued the arbitrability issue had been conclusively settled, but it did not dispute Naumes was entitled to judicial review of the hearing examiner's decision under LUPA. The court denied the motion to compel arbitration. The court found judicial review of the hearing examiner's decision was available through LUPA as the exclusive means of appeal. The court was not persuaded the binding site plan dispute fell within the scope of the development agreement because questions of municipal code interpretation were

4

not themselves a matter addressed in the development agreement. The court granted the City's motion to bifurcate Naumes' LUPA claim from its causes of action seeking damages. Naumes appealed.

ANALYSIS

The issue is whether the trial court erred in denying Naumes' motion to compel arbitration. Naumes contends the parties were bound by the arbitration provision in their development agreement. The City responds that its code process controls.

Our review is de novo for a trial court's decision to deny a motion to compel arbitration. *Zuver v. Airtouch Comm'cns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004). The party opposing arbitration bears the burden of showing the arbitration clause is inapplicable or unenforceable. *Otis Hous. Ass'n, Inc. v. Ha*, 165 Wn.2d 582, 587, 201 P.3d 309 (2009).

The City initially argues this appeal is moot because Naumes did not appeal the first order denying Naumes' motion to compel. The City's premise theorizes the trial court denied the second motion to compel based on res judicata and collateral estoppel principles[1]; therefore, the sole viable matter to appeal is the first order and the time to appeal that order has expired under RAP 5.2(a). But, the court's second order denying the motion to compel does not specify the court's basis for denial was res judicata and/or collateral estoppel; rather, the court states the motion is denied. Moreover, our

---

[1] Naumes argues these issues are raised for the first time on appeal. *See* App. Reply Br. at 8. The City's answer to Naumes' second complaint, however, clearly sets forth these affirmative defenses.

5

record does not contain the motion hearing's report of proceedings to ascertain the court's basis for the second denial. Given the general wording of the trial court's order and our preference to settle controversies on their merits, we conclude the issue of whether the trial court erred when denying Naumes' motion to compel is not moot. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). Thus, we proceed to the merits.

Washington has a strong public policy favoring arbitration. *Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc.*, 148 Wn. App. 400, 405, 200 P.3d 254 (2009). Therefore, we "must indulge every presumption in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Verbeek Props., LLC v. GreenCo Envtl., Inc.*, 159 Wn. App. 82, 87, 246 P.3d 205 (2010).

Naumes seeks modification of the GBSP by means of a SBSP and seeks an arbitrator's approval of that process. Cities are authorized to adopt by ordinance procedures for the division of land by binding site plan. RCW 58.17.035. A binding site plan is an alternative to the procedures otherwise required for subdivision approval. *Id.*

The City adopted procedures consistent with RCW 58.17.035 by ordinances codified at Title 16 CMC. Under the CMC, binding site plans are to be processed in accordance with ch. 16.24 CMC (previously codified at ch. 16.10 CMC). CMC § 16.24.060 relates to the SBSP procedure. It states, "Application for approval of a

specific binding site plan as to part or all of the land covered by the general binding site plan shall be filed with the administrator at such time as the property owner(s) intends to sell or lease a portion of property approved in a general binding site plan." CMC § 16.24.060(A). But, "The process of review and approval of a specific binding site plan shall not be used to modify the provisions of the approved general binding site plan." *Id.* Moreover, "The specific binding site plan shall be reviewed for compliance with the conditions of the general binding site plan." CMC § 16.24.060(B). Thus, the process for approving a SBSP entails solely an administrative determination of consistency with the conditions of the GBSP. This decision is made by the City's administrative official. *Id.*

A GBSP may be modified solely in accordance with the original GBSP application process. CMC § 16.24.080. GBSPs may be approved solely after a public notice of application, a public comment opportunity, a public hearing before the hearing examiner, and a final decision by the hearing examiner. *See* CMC § 16.24.010 (general binding site plan approval is "Type IVA project permit"); CMC § 19.18.010 (Type IVA project permits require public notice of application, public comment period, and public hearing before the hearing examiner). Plainly, under the CMC an administrator is authorized to administratively approve a SBSP so long as it conforms to the existing, overarching GBSP. Thus, contrary to Naumes' arguments, a code administrator cannot approve a SBSP that would itself effect a modification or alteration of the GBSP.

7

Here, the parties' agreement states, "In the event the Parties cannot agree on any matter set out in this Agreement, they shall promptly consult together and attempt to resolve the dispute. In the event they cannot agree upon a resolution of the dispute, the same shall be settled by arbitration." CP at 295. While Isenhart Road relates to the development, the adjustment to its placement involves a modification to or an alteration of the GBSP. Notably, the parties' development agreement states, "Naumes and the City desire that the future development of the Property be consistent with land use and development regulations of the City now existing or hereafter adopted." CP at 280. Arbitration cannot substitute for the public participation required by the CMC for GBSP modifications.

Moreover, a decision on an application to modify an approved binding site plan is subject to judicial appeal. CMC § 19.18.010. A LUPA action "shall be the exclusive means of judicial review of land use decisions." RCW 36.70C.030(1). By establishing a uniform, expedited appeal process and uniform criteria for review, LUPA promotes "consistent, predictable, and timely judicial review." RCW § 36.70C.010. LUPA, not arbitration, is the proper recourse in this matter.

The City asks us to "remand to the trial court for entry of an order dismissing, with prejudice, the non-LUPA claims." Resp't Br. at 39. This request would be outside Naumes' notice of appeal and would be considered affirmative relief. A notice of cross appeal is required if the respondent "'seeks affirmative relief as distinguished from the urging of additional grounds for affirmance.'" *Robinson v. Khan*, 89 Wn. App. 418, 420,

8

No. 32191-6-III
*Naumes, Inc. v. City of Chelan*

948 P.2d 1347 (1998) (quoting *Phillips Bldg. Co. v. An.*, 81 Wn. App. 696, 700 n.3, 915 P.2d 1146 (1996)). Because the City failed to file a notice of cross review and because it is now requesting affirmative relief, we decline remand on this matter.

Affirmed.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.