IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Parental Rights to:

C.E.C.L.,

a Minor Child.

No. 84156-4-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — A father appeals from an order terminating his parental rights after default and the denial of his motion to vacate under CR 60. Because the trial court abused its discretion as to the motion to vacate, we reverse.

FACTS

C.L. was declared dependent in November 2020 based on an agreed order. The father, Mr. L, was represented by counsel in the dependency proceedings. On October 14, 2021, the Department of Children, Youth, and Families (the Department) petitioned for an order terminating the parent-child relationship between C.L. and both parents.[1] After unsuccessful attempts to personally serve Mr. L, the Department moved to serve him by publication, and the court granted the motion. The Department concurrently attempted to serve

---

[1] The mother is not a party to this appeal.

Mr. L by certified mail at his last known address, though it previously had declared his whereabouts were unknown. Pursuant to King County Local Juvenile Court Rule (LJuCR) 4.3, notice of the termination and a copy of the petition were emailed to Mr. L's dependency counsel on or around November 29, 2021. By November 29, Mr. L had not appeared in the termination proceeding, nor had any attorney, and the Department moved for an order of default. The court held a fact-finding hearing on February 7, 2022, and Mr. L failed to appear personally or through counsel. Only social worker Madeline Rasch testified. The court granted the Department's petition and terminated Mr. L's parental rights.

Eric Beckendorf, who was representing Mr. L in the dependency proceeding, appeared for a previously scheduled hearing in that matter on February 16 and learned of the default and termination. He filed a notice of appearance in the termination proceeding on February 17 and subsequently moved to set aside the orders on default and termination under CR 60. Beckendorf argued he received notice of the termination petition by email pursuant to the local rule, but he had "missed" and not opened or read the email. He asserted in the motion to vacate that, if he had read the email, he would have appeared in the termination proceedings. Beckendorf also argued Mr. L had not been properly served personally or by mail. The court granted a brief continuance for the parties to confirm whether Mr. L had been incarcerated at the time of the termination trial and, upon learning that he was not, denied the motion to vacate.

Mr. L timely appealed.

ANALYSIS

Mr. L presents several assignments of error on appeal: he challenges sufficiency of service, claims ineffective assistance of counsel, asserts violations of procedural due process, and avers the court failed to investigate a conflict of interest and erred in its denial of his motion to vacate. Because the denial of Mr. L's motion to vacate under CR 60 is dispositive, we need not reach the other issues.

Termination of a parent-child relationship is a civil proceeding governed by our rules of civil procedure. In re Welfare of S.E., 63 Wn. App. 244, 249, 820 P.2d 47 (1991). The Department may move for default against a parent who has failed to appear. In re Welfare of S.I., 184 Wn. App. 531, 540, 337 P.3d 1114 (2014). Under CR 60, a party may seek relief from a default judgment due to "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(1). We "review a trial court's decision on a motion to set aside a default judgment for abuse of discretion." Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). A court abuses its discretion when its decision "is based on untenable grounds, such as a misunderstanding of law." Id. at 703. A court likewise abuses its discretion "if the factual findings are unsupported by the record" or if "the facts do not meet the requirements of the correct standard." Fowler v. Johnson, 167 Wn. App. 596, 604, 273 P.3d 1042 (2012). "[W]here the determination of the trial court results in the denial of a trial on the merits an abuse of discretion may be more readily found than in those

instances where the default judgment is set aside and a trial on the merits ensues." White v. Holm, 73 Wn.2d 348, 351-52, 438 P.2d 581 (1968).

Default judgments are disfavored and instead the law favors determination of controversies on the merits. Little, 160 Wn.2d at 703 (quoting Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979)). "The fundamental principal . . . is 'whether or not justice is being done.'" Id. (internal quotation marks omitted) (quoting Griggs, 92 Wn.2d at 582). A party seeking to vacate a default judgment must demonstrate:

> (1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

Little, 160 Wn.2d at 703-04. The first two factors are primary, while the second two are secondary; the test is equitable rather than "mechanical." Id. Relief under CR 60(b)(1)-(3) is "more forgiving than the following eight" bases found in CR 60(b)(4)-(11). In re Marriage of Gharst, No. 38379-2-III, slip op. at 6, (Wash. Ct. App. Mar. 9, 2023), https://www.courts.wa.gov/opinions/pdf/383792_pub.pdf.

I.    Prima Facie Defense

Mr. L first argues the trial court applied the wrong legal standard because it did not view his proffered defense in the light most favorable to him.[2] "When

---

[2] Without authority for the distinction, the Department consistently modifies the requirement of a prima facie showing of a defense, asserting the standard is to demonstrate a "meritorious defense." Nothing in CR 60 imposes such a requirement, nor does a significant body of case law interpreting this rule. Compare Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 583, 599 P.2d 1980 (1979) (using "meritorious" standard), and Evans v. Firl, __ Wn. App. 2d __, 523 P.3d 869, 876-77 (2023) (using "meritorious" standard), with Rush v. Blackburn, 190 Wn. App.

analyzing the existence of a prima facie defense, a court must 'view the facts proffered in the light most favorable to the defendant, assuming the truth of that evidence favorable to the defendant, and disregarding inconsistent or unfavorable evidence.'" Fowler, 167 Wn. App. at 601 n.4 (quoting TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies Inc., 140 Wn. App. 191, 203, 165 P.3d 1271 (2007)). The purpose of the rule is to demonstrate that a defense "exists," and avoid a useless trial if the defaulting party "cannot bring forth facts" to defend against the claim. Griggs, 92 Wn.2d at 583. Further, the court may rely on its own knowledge of the "facts and the theory of the defense." Id. at 584.

The standard of proof for termination further weighs in Mr. L's favor with regard to this first step of the test under CR 60 because case law is clear that the Department must establish the statutory termination criteria "by clear, cogent, and convincing evidence" under RCW 13.34.190(1)(a)(i). "'[T]he burden of proof in a termination trial is on the Department and should never be shifted to the parent.'" In re Parental Rights to M.A.S.C., 197 Wn.2d 685, 698, 486 P.3d 886 (2021) (quoting In re Welfare of D.E., 196 Wn.2d 92, 103, 469 P.3d 1163 (2020)). In his reply to the Department's opposition to his motion to vacate, Mr. L contended his defense would have been attacking the Department's offer of proof as to the statutory elements. He would have argued that COVID-19

945, 959, 361 P.3d 217 (2015) (quoting White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968)), Ha v. Signal Elec., Inc., 182 Wn. App. 436, 459, 332 P.3d 991 (2014), Sacotte Const., Inc. v. Nat'l Fire & Marine Ins. Co., 143 Wn. App. 410, 418, 177 P.3d 1147 (2008), Morin v. Burris, 160 Wn.2d 745, 755, 161 P.3d 956 (2007) (quoting White, 73 Wn.2d at 352), and Farmers Ins. Co. of Wash. v. Waxman Indus., Inc., 132 Wn. App. 142, 145-46, 130 P.3d 874 (2006).

The "meritorious" qualifier, rather, seems to have periodically infiltrated some Washington cases by way of case law analyzing the federal version of the rule. See Parker v. Scheck Mech. Corp., 772 F.3d 502, 505 (7th Cir. 2014). Particularly, because neither party asks us to apply one standard over the other, we apply the test as set out in the plain language of our state civil rule.

impacted access to services, that there was insufficient time "to demonstrate that there was little likelihood that conditions could not be remedied in the foreseeable future or that continuation of the parent/child relationship" would have negatively impacted C.L.'s "ability to integrate into a stable and permanent home," and that termination was not in the child's best interests. Again, Mr. L bears no burden of proof in termination. Regardless, he makes a prima facie case that his defense would have been to undermine the Department's case and highlight its inability to meet the burden of proof under the statute. This is sufficient under CR 60(b) and the court's finding to the contrary in its order denying Mr. L's motion to vacate is not supported by substantial evidence.

II. Mistake, Inadvertence, Surprise, or Excusable Neglect

The second of the primary factors the court considers is whether "the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect." Little, 160 Wn.2d at 704. "A party may obtain CR 60(b) relief based on excusable neglect even if the party was not blameless in contributing to the need for relief." Gharst, No. 38379-2-III, slip op. at 1. "Instead, excusable neglect may apply when a party's actions are attributable to negligence." Id. at 7.

In Griggs, the court found excusable neglect where a petitioner's ex-husband was obliged to defend against the litigation, she financially contributed to securing counsel, and she "had no knowledge of the actual trial date" or that counsel had withdrawn. 92 Wn.2d at 582. In Norton v. Brown, a petitioner mistakenly believed his insurance company "was already handling the claim on

his behalf" and did not appear or contact his insurance company. 99 Wn. App. 118, 120, 992 P.2d 1019 (1999). The court held this "genuine misunderstanding between an insured and his insurer as to who is responsible for answering the summons and complaint will constitute a mistake for the purposes of vacating a default judgment." Id. at 124.

Here, the trial court failed to consider mistake or excusable neglect by Mr. L, making only a conclusory finding that any mistake on the part of Beckendorf "does not excuse the father's inaction and decision not to participate in the termination proceedings."[3] The record demonstrates that Mr. L had been in regular contact with his dependency attorney, and Beckendorf testified that, had he read the email notice of termination proceedings, he would have entered a notice of appearance and an answer to the petition. Thus, Mr. L had a reasonable expectation that his attorney was handling this "preliminary" hearing. Further, the Department had knowledge there was likely a mistake as Beckendorf was continuing to defend against the dependency action. Moreover, the Department knew that Mr. L had been served by publication of a notice in the Daily Journal of Commerce as attempts at personal service had failed and the notice by certified mail was sent to a hotel where the Department knew Mr. L was no longer residing.[4] Washington courts have vacated default judgment in similar factual situations and in cases of more egregious mistakes in civil proceedings

---

[3] The court ordered a brief continuance of the proceedings on the motion to vacate and noted, "the only issue remaining for this hearing is whether Mr. [L] was or was not incarcerated on February 7, 2022, the day he was defaulted and his parental rights were terminated."

[4] The social worker submitted a declaration dated October 14, 2021, in support of the Department's motion for an order allowing notice by publication in the termination action. In it, she declared, "The name or place of residence or whereabouts of the child's parent or guardian is unknown."

that did not involve the fundamental constitutional right to parent. The court's finding that Mr. L's lack of participation was anything more than a mistake of his attorney or excusable neglect is unsupported by substantial evidence and rests on a misapplication of the law. This factor weighs in favor of vacating the order of termination.

III.    Due Diligence

The third element of the rule (the first of the secondary factors in the court's analysis), diligence after discovery of the mistake, also weighs in favor of vacating the order of termination. "Due diligence after discovery of a default judgment contemplates the prompt filing of a motion to vacate." Akhavuz v. Moody, 178 Wn. App. 526, 539, 315 P.3d 572 (2013). Further, where relief is sought less than one year after judgment is entered, "a court's equitable powers are especially strong." Gharst, No. 38379-2-III, slip op. at 1.

While there is no bright-line rule regarding the time limits of due diligence, Washington courts have held parties acted with diligence where the defendant moved to vacate 11 days, 29 days, and a month after default had been entered. Akhavuz, 178 Wn. App. at 538 (collecting cases). In contrast, a party who waited three months to move to vacate did not exercise diligence, nor did a party who moved three weeks after discovering the default but whose insurance company had received notice months earlier. Id. at 539 (collecting cases).

Here, Beckendorf learned of the default and termination nine days after they were ordered. He entered a notice of appearance the day after this discovery and filed a motion to vacate 11 days later. This plainly aligns with

previous cases where this court has held a party exercised diligence. This factor weighs in favor of vacating the order of termination.[5]

IV.     Substantial Hardship

Finally, a party moving to vacate a default judgment must demonstrate "that no substantial hardship will result to the opposing party." White, 73 Wn.2d at 352. "The prospect of having to go to trial is not, by itself, enough to constitute substantial hardship." Akhavuz, 178 Wn. App. at 539. However, a "significant risk that the evidence has gone stale as a result of the delay" can constitute a hardship. Id. The Department made no allegation before the trial court or this court that any evidence would go stale or that it would suffer any other substantial hardship if the termination order is vacated. Further, the Department's case in chief involved only one witness and its presentation on the merits lasted approximately 20 minutes and 29 seconds. To the extent the court appears to have considered hardship to the dependent child, and entered findings on that question as well as the father's ability to provide permanence for the child, this would constitute misapplication of the proper standard under CR 60 and, thus, an abuse of discretion.[6] This factor weighs in favor of vacatur.

---

[5] The trial court made no written findings as to diligence. The record is silent as to whether the trial court even considered this factor. Failure to apply each of the factors, and consider the overall equities of the case, constitutes an abuse of discretion based on misapplication of CR 60.

[6] Additionally, reaching prospects for adoption and permanency for the child, along with the father's ability to provide permanence within the child's near future is well outside the bounds of the issue presented to the trial court on a motion to vacate. The sole question is whether vacating the order on termination after default is proper to allow the father to litigate those underlying questions regarding permanency and his ability to parent the child.

V.      Equitable Considerations

Finally, the court abused its discretion by focusing on potential alternative forms of service rather than the equities before it.   Again, the test for vacatur under CR 60 is equitable rather than mechanical.  Little, 160 Wn.2d at 704.  As a preliminary matter, the court erred as a matter of law in concluding that Mr. L was properly served by mail.  The Department's service by mail does not meet the plain requirements of the statute, which only permits service by mail if "the party's address is known or can with reasonable diligence be ascertained."   RCW 13.34.070(8).  Rasch declared under penalty of perjury that "[t]he name or place of residence or whereabouts of the child's parent or guardian is unknown" in support of the motion to serve Mr. L by publication.  As such, service by mail was legally ineffective and Mr. L was only properly served by publication.   The Department knew this fact and allowed the court to make a finding to the contrary that Mr. L had been served by mail.

Further, the ultimate legal question here is one of constitutional magnitude.  "Parents have a fundamental liberty and property interest in the care and custody of their children."  In re Dep. of A.M.M., 182 Wn. App. 776, 790-91, 332 P.3d 500 (2014).   An order terminating the parent-child relationship "completely and irrevocably eliminates all rights" of a parent to their child.  In re Dep. of K.S.C., 137 Wn.2d 918, 930 n.7, 976 P.2d 113 (1999).  The parent loses "all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support."  RCW 13.34.200(1).  This is significantly distinct from other civil proceedings, where a client might suffer a

financial loss or other sort of hardship as a result of a default, but may recover in a malpractice claim for an attorney's error.

It is not lost on this panel that the Department had reason to believe Mr. L was unaware of the proceedings as it knew Mr. L had only been served by publication, which was markedly unlikely to reach him.[7] LJuCR 4.3(a)(2) requires the Department to provide counsel in the underlying dependency action with "a copy of the petition, notice and summons, and order setting case schedule." While the Department is correct that LJuCR 4.3(a)(2) does not create a substantive duty or a right, the fact that this local requirement was promulgated into the legal landscape that treats dependency and termination proceedings as distinct is highly suggestive that the purpose of this courtesy notice was, at least in part, to avoid precisely the sort of mistake at issue here. While there is no legal duty on the assistant attorney general representing the Department in termination proceedings to contact a parent or parent's counsel where they suspect a mistake has occurred, it is a factor to be considered in the equities of a case, particularly where a constitutional right is at stake and where the Department knows its chosen form of service was unlikely to reach the parent.[8]

---

[7] Wash. Court of Appeals oral argument, In re Dep. of C.E.C.L., No. 84156-4-I, (Mar. 14, 2023), at 17 min., 7 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023031388/?eventID=2023031388 (counsel agreeing service by publication was "markedly unlikely" to reach Mr. L).

[8] While two of Rasch's service letter emails informally notified Mr. L of the upcoming termination hearing, it states only that there is a "Termination of Parental Rights Preliminary Hearing on February 07, 2022 at 08:30AM." However, the email did not inform Mr. L that a termination petition had been filed, did not provide a copy of the petition, did not reflect the bases for the petition, did not inform him of his rights, and did not inform him of the nature or consequences of the hearing. This is inadequate to notify Mr. L of the termination proceedings, particularly given the constitutional interests at stake.

Here, the equities weigh in favor of vacatur. The trial court abused its discretion in applying the wrong legal standards, entering findings unsupported by substantial evidence, and failing to properly weigh the equities in this case. We reverse the order denying Mr. L's motion to vacate and the order terminating the parent-child relationship.

Hazelrigg, A.C.J.

WE CONCUR:

Díaz, J.

Birk, J.