IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 84850-0-I |
| NAIBA SADAT, | |
| Respondent, | DIVISION ONE |
| v. | |
| SAYED INAYET SADAT, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — Sayed Sadat appeals the denial of his motion to vacate a default parenting plan that restricts his parenting time and a default dissolution order that awards Naiba Sadat half of a settlement the Sadats received during their marriage. Finding no error, we affirm.

FACTS

Sayed and Naiba Sadat[1] were married in Pakistan on July 29, 1995. According to Naiba, their marriage was an arranged one. She was 17 years old, and he was 15 years older. The couple have two children: an adult son and a daughter who was 12 years old when Naiba petitioned for divorce. Their daughter has "serious special needs," including a rare genetic metabolic disorder that can result in life-threatening hypoketotic hypoglycemia and severe liver dysfunction, as well as autism.

---

[1] Because the parties have the same last name, for clarity we refer to them here by their first names. We mean no disrespect.

On September 22, 2021, Naiba applied for a domestic violence protection order (DVPO). Following a hearing at which both Naiba and Sayed testified, the court found that a "preponderance of the evidence has not established that there is domestic violence" and that Sayed was "more credible." The court denied Naiba's petition on October 18.

In December 2021, Naiba applied for child support from the Department of Social and Health Services' Division of Child Support. Sayed was served notice on December 30, and he hired counsel to represent him in the matter. After telephonic hearings in April and May 2022, in June 21, 2022, an administrative law judge ordered Sayed to pay Naiba $651 monthly and awarded her back child support of $3,486.

While the child support proceedings were pending, on February 9, 2022, Naiba petitioned for divorce. Sayed was served on February 15. His answer was due 20 days later, on March 7.[2]

On July 22, 137 days after Sayed's answer was due, the court granted Naiba's motion for default.[3] It issued findings and conclusions about their marriage, a dissolution decree, and a parenting plan for their daughter. The court found that the couple's community personal property consisted of three items: a 2007 Lexus van, a 2001 Lexus IS 34D, and "50% of GNC Settlement ($100,000)." The court's default dissolution decree awarded the 2007 van to Naiba and the 2001 car to Sayed. It awarded each "50% of GNC Settlement ($100,000)" but then ordered Sayed to pay Naiba "$100,000 (which is half of the GNC settlement)."

---

[2] The regular civil rules apply to chapter 26.09 RCW proceedings. RCW 26.09.010.
[3] Naiba's motion for default is not in the record.

In the parenting plan for their daughter entered by default, the court found that Sayed had the following problems requiring limitations under RCW 26.09.191: neglect, a history of domestic violence as defined in RCW 26.50.010, and the abusive use of conflict, i.e., "he uses conflict in a way that may cause serious damage to the psychological development" of his child. The court therefore limited Sayed's time with his daughter to one day per week. The plan also stated, however, that "[a]fter two months of the father exercising his residential time, the father may petition the court for up to 50% of residential time." The court's default orders were served on Sayed in August 2022.[4]

On September 2, 2022, Sayed responded to Naiba's petition and moved to vacate the default judgment and orders. The court ordered a show cause hearing.

At the show cause hearing on October 12, 2022, Sayed agreed he had been properly served with Naiba's dissolution petition. Naiba agreed there was a scrivener's error in the court's default dissolution decree and agreed to an amendment changing her award to $50,000 instead of $100,000. The court stated that while Sayed's motion to vacate was timely, Sayed had "acknowledged" there was a "tactical situation," and he thought he would have more time to respond even though "he was aware [that] he had been properly served."

The court's written order "specifically finds that [Sayed's] failure to participate was a tactical decision, as acknowledged by the respondent and respondent's counsel in both in the pleadings and in argument." It found there was no excusable neglect or any other reason to justify relief from the court's judgment. Finally, as Naiba conceded

---

[4] By email on August 3 and by mail on August 12.

3

the total pre-division settlement amount was $100,000, it amended the final divorce order so that Naiba was awarded $50,000 instead of $100,000.

On December 5, the court denied Sayed's motion to reconsider. Its order specifically found that "based on Mr. Sadat's own statements, . . . his failure to participate in the dissolution was a <u>decision</u>. Both he and his attorney have acknowledged this repeatedly." Sayed timely appeals.

## DISCUSSION

Sayed claims the court erred by denying his motion to vacate. He argues the court "disregard[ed]" substantial evidence that refutes the restrictions on his time with his daughter; he contends that, considered "cumulatively," his actions "amount to" excusable neglect; and he argues the court's dissolution decree exceeds the scope of relief for which Naiba petitioned.

Proceedings to vacate a default judgment are equitable in character, and relief should be "afforded in accordance with equitable principles." <u>Griggs v. Averbeck Realty, Inc.</u>, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). "The trial court should exercise its authority 'liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done.' " <u>Id.</u> at 582 (quoting <u>White v. Holm</u>, 73 Wn.2d 348, 351, 438 P.2d 581 (1968)).

A motion to vacate is authorized only "for reasons extraneous to the action of the court or for matters affecting the regularity of the proceedings." <u>Burlingame v. Consol. Mines & Smelting Co., Ltd.</u>, 106 Wn.2d 328, 336, 722 P.2d 67 (1986) ("Errors of law are not correctable through CR 60(b); rather, direct appeal is the proper means of remedying legal errors."). That is, "[o]n review of an order denying a motion to vacate,

4

only 'the propriety of the denial *not* the impropriety of the underlying judgment' is before the reviewing court." State v. Gaut, 111 Wn. App. 875, 881, 46 P.3d 832 (2002) (discussing CR 60(b)) (emphasis added) (quoting Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980) (citing Browder v. Dep't of Corr., 434 U.S. 257, 263 n.7, 98 S. Ct. 556, 54 L. Ed. 2d 521 (1978))).

We review a court's decision regarding a motion to vacate for abuse of discretion. Griggs, 92 Wn.2d at 582. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

I.     CR 60(b)(1)

Dissolution proceedings are governed by the regular civil rules, including CR 60. RCW 26.09.010. Under CR 60(b)(1), a court "may relieve a party . . . from a final judgment [or] order . . . for the following reasons: (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." A CR 60(b)(1) moving party must be prepared to show

> (1) that there is substantial evidence supporting a prima facie defense;
> (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect;
> (3) that the defendant acted with due diligence after notice of the default judgment; and
> (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

Little v. King, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007) (citing White, 73 Wn.2d at 352). "Factors (1) and (2) are primary; factors (3) and (4) are secondary." Id. The motion

> "shall be . . . supported by the affidavit of the applicant or the applicant's attorney setting forth a concise statement of the facts or errors upon which the motion is based, and if the moving party be a defendant, the facts constituting a defense to the action or proceeding."

5

CR 60(e).

First, Sayed argues that the court "disregarded" the court order in the DVPO proceeding denying Naiba's petition and finding him, not Naiba, "more credible." He argues that "a court order stating that her testimony was not credible is the strongest evidence [he] could have put forward to suggest a trial is necessary," and "[f]or this reason alone," the trial court should have vacated the final parenting plan.

Naiba argues that the court did consider the order denying the DVPO she sought, that restrictions on parenting plans do not require a DVPO, and that there were other reasons for which the court placed RCW 26.09.191 restrictions on Sayed. We agree with Naiba.

On a CR 60(b)(1) motion to vacate, the issue is not the credibility of the parties or the propriety of the underlying judgment—here, the parenting plan ordered by the court in the default judgment—but the propriety of the denial of the motion to vacate. See Gaut, 111 Wn. App. at 881. Thus, as to the first factor, the issue is whether Sayed's motion to vacate showed "substantial evidence supporting a prima facie defense." Little, 160 Wn.2d at 703-04. The court's parenting plan placed limitations on Sayed's parenting time for three reasons: neglect, domestic violence, and the abusive use of conflict. See RCW 26.09.191(3)(a), (e). Sayed challenges only one of these alternative bases, the finding of domestic violence. The court did not disregard the order Sayed attached, but rather, noted that "just because a petition for a domestic violence protection order is not granted, does not mean domestic violence did not in fact occur." see RCW 26.09.191(2)(a). Sayed did not provide substantial evidence supporting a prima facie defense to the limitations in the parenting plan.

6

Second, Sayed argues that, "taken cumulatively," he can show reasons why his failure to appear and answer Naiba's petition were excusable neglect on his part, which "is at bottom an equitable [determination], taking account of all relevant circumstances surrounding the party's omission." Specifically, Sayed argues that he had representation for the hearings regarding child support, and that he represented himself in the domestic violence matter, so he was actively appearing in matters related to the dissolution. He contends it was "reasonable that [he] wanted to wait for entry of the administrative child support order prior to responding to the [divorce] petition" and that "Naiba acted in bad faith when she motioned the court for default without providing me notice." Because "money has been tight," he prioritized the matters with earlier hearing dates. And at oral argument before the trial court, Sayed suggested that because he is not a native English speaker, "communication may not be always clear."

Sayed agrees he was properly served in the dissolution matter and he conceded that his declaration did not state that he had any English language issues. The summons Sayed acknowledged he received on February 15 instructs, "You must **respond** in writing for the court to consider your side. ***Deadline!*** Your *Response* must be served on Petitioner within **20 days** of the date you were served this *Summons*." Further, the summons warns that the consequence of not filing and serving a response or notice of appearance by the deadline is that the court may approve the Petitioner's request in a default judgment.

Here, Sayed's belief that it would be "reasonable" for him not to respond and his belief that Naiba "acted in bad faith," despite the summons's warning, were not mistakes or excusable neglect. A party's decision not to read a notice is not grounds for vacating

7

a default judgment. <u>See, e.g.,</u> <u>Hwang v. McMahill</u>, 103 Wn. App. 945, 952, 15 P.3d 172 (2000) (no tenable basis for the court's finding of mistake, surprise, or excusable neglect under CR 60(b)(1) where the defaulting tenant "did not understand what was happening and could not understand the words that were used [so she] read [the eviction notice] no further" and failed to respond); <u>Johnson v. Cash Store</u>, 116 Wn. App. 833, 848, 68 P.3d 1099 (2003) (inexcusable neglect where summons and complaint served on store manager, who thought documents were irrelevant to store's business and provided no explanation for failing to inform company's administration or legal counsel that she received them). Sayed chose not to respond or to seek legal counsel on the dissolution matter. Thus, the court did not abuse its discretion by determining there was no "inadvertence, excusable neglect, newly discovered evidence, or fraud," or any other reason to justify granting Sayed's motion to vacate.

## II.    CR 60(b)(5)

Sayed argues that, because the court's divorce decree awards Naiba $50,000 instead of half of their settlement for which she petitioned, the court's decree is void. Naiba argues that Sayed did not argue this point below so it is not before this court and, even if it is before this court, the scrivener's error the court corrected below solved any problem with the court's dissolution decree.

Under RAP 2.5(a), an appellate court "may" refuse to review any claim not raised below. As the issues of the settlement's initial value, its remaining amount, and the share of it due to each party were raised below, even if not with citation to CR 60(b)(5), we exercise our discretion to review this issue.

8

A judgment or decree entered by default " 'shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.' " Johnson v. Johnson, 107 Wn. App. 500, 503-04, 27 P.3d 654 (2001) (quoting CR 54(c)). The issue is one of due process: due process permits the entry of a default judgment without further notice to a properly served defendant because the service of process provides sufficient notice to make an intelligent decision to appear or default. Id. (citing Conner v. Universal Utils, 105 Wn.2d 168, 172, 712 P.2d 849 (1986)).

But due process affords a defendant the right to assume that a default judgment will not exceed or substantially differ from the demand stated in the complaint. Conner, 105 Wn.2d at 173 (citing State ex rel. Adams v. Superior Court, 36 Wn.2d 868, 872, 220 P.2d 1081 (1950); Allison v. Boondock's, Sundecker's & Greenthumb's, Inc., 36 Wn. App. 280, 282, 673 P.2d 634 (1983)). If a default judgment awards relief that is other than or additional to what was requested in the complaint, then a defaulting defendant was denied due process, Conner, 105 Wn.2d at 173, and the award "is void to the extent it differs" from the complaint, Johnson, 107 Wn. App. at 504 (citing In the Matter of the Marriage of Leslie, 112 Wn.2d 612, 618, 772 P.2d 1013 (1989) (other citations omitted)). Whether a judgment is void under CR 60(b)(5) is reviewed for an abuse of discretion. Kennedy v. Sundown Speed Marine, Inc., 97 Wn.2d 544, 548, 647 P.2d 30 (1982).

For example, in Leslie, the court held that a default dissolution decree was void to the extent it awarded medical expenses to be paid by the respondent father where neither the mother's petition for dissolution nor the parties' property settlement asked for payment of medical expenses. 112 Wn.2d at 614, 620. In Johnson, the mother's divorce

9

petition asked the court to equally divide the value of the family home. 107 Wn. App. at 502. It did not ask the court to sell the home, convey the home to the respondent father, require the father to execute a deed of trust, or pay the mother interest. Id. The court held that the father's "procedural due process rights were violated" because the mother's petition "provided inadequate notice," so the trial court's default decree requiring the father to execute a mortgage at 12 percent interest to secure his debt to her was void. Id. at 504-05.

Unlike in Leslie, where the court awarded medical expenses not included in the mother's petition, in the present case, Naiba's petition did include a request to divide the GNC settlement. In the section of the petition pertaining to personal property, Naiba asked the court to give her one car and Sayed the other and to equitably divide the couple's other community asset, identified as "GNC Settlement Amount." The summons with which Sayed agrees he was properly served included Naiba's petition for divorce, so he had notice she was requesting half of the settlement. After Naiba moved for default, the court's findings and conclusions about their marriage stated that their community personal property consisted of the cars and "50% of GNC Settlement ($100,000)." Unlike in Johnson, where the execution of a mortgage, as ordered by the court, was not the same kind of award requested by the petitioner, who had asked the court to equally divide their house's value, here, the court's award of 50 percent of the GNC settlement to Naiba is the kind of award for which she petitioned when she asked the court to equitably divide the settlement, and its amount does not exceed the initial value of the settlement. However, the court's default dissolution decree contained a

scrivener's error that ordered Sayed to pay Naiba "$100,000 (which is half of the GNC settlement)."

When Sayed moved to vacate, he also responded to her petition for divorce using a form response and checked a box indicating he disagreed with the disposition of their personal property. Sayed's declaration in support of the motion to vacate states that the GNC settlement was received "seven to ten years ago, but the money has been gone for three or four years." Sayed argued that "[e]ven if there was still money from the settlement, which there is not, the total settlement was $100,000 [but] Naiba obtained judg[]ment in the final orders against me for the entire amount of the settlement (not half as she indicates), claiming $100,000 is 50% of the settlement."

Naiba's declaration for the show cause hearing states that "[t]o the best of my knowledge, we have not spent the GNC settlement money." To the extent that Sayed challenges whether the settlement funds were still extant, on appeal of an order denying a motion to vacate, we review only the propriety of the denial, not of underlying judgment. Gaut, 111 Wn. App. at 881. But Naiba agreed that Sayed "is correct that the full settlement amount was only $100,000, and therefore we should each should be entitled to $50,000." At the show cause hearing, the court asked if Naiba was "prepared to enter an amendment on that point," and she answered "yes . . . [a]bsolutely." As a result, the court's order denying Sayed's motion to vacate also amended the final divorce decree, stating: "The parties agree that the GNC settlement was for $100,000 total, and that 50% of that amount is $50,000. Language in the final order that is inconsistent with this is a scrivener's error."

11

While Sayed may have believed he could afford not to reply to Naiba's petition, he had notice that the court would divide their GNC settlement into amounts to be awarded to each of them. And Sayed and Naiba agree that the amount the court awarded to her after the scrivener's error was fixed, $50,000, does not exceed the settlement's total initial value of $100,000. Thus, the court's order awarding Naiba $50,000 is not an abuse of discretion because Naiba's petition, which Sayed does not dispute was properly served on him, gave him notice that the court would equitably divide their settlement's value into an amount for each of them.

Affirmed.[5]

_Chung, J._

WE CONCUR:

_Hazelrigg, ACJ_                         _Smith, C.J._

---

[5] To the extent Sayed argues the court also erred under CR 60(b)(11) regarding "[a]ny other reason justifying relief from the operation of the judgment," he makes no separate argument for that error, and an assignment of error not briefed is waived. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992).